Good morning, Your Honors. Chris Baker here from the James Law Firm here on behalf of the appellant, Mr. Tommy Collier. Your Honor, criminal cases are not supposed to be a game of hide-the-ball. They're supposed to have fair notice and provide the defense an opportunity to defend their client and for the accused to defend themselves. Under the federal rules, Rule 16, the recent changes to the further that goal by requiring the government to provide additional notice that matched our civil counterparts. Here in this case, those rules were not followed. Disclosures were not appropriate. Disclosures did not provide the reasons and basis. Reasons and basis is really easy to understand. In fact, I looked at the son, she asked, why? Why is it doing that? What is going on? And then I had to respond, it's because of the movement. It's because of how things are aligned. We give an opinion in a case and there are reasons and basis behind that. It is not a game of hide-the-ball. Counsel, I think there's a very good argument here that the Rule 16 was violated, but can you show prejudice and if so, how? Your Honor, I think it's very simple. The expert at trial testified to four particular tests. The spot test, the thin layer chromatograph, the gas chromatograph mass spectrometry, and the Fourier transform infrared spectrometry. That was effectively the largest body of the case. It was one of the largest portions of the trial itself. There was no notice. It was very difficult to meet the defense. We didn't know what he would testify to. We didn't know what he would say and the jury heard all of that information. I don't think it's irrational to consider that after three hours of testimony, what this individual said is strongly relied upon or at least makes up a large body of what the jury decided. You have an expert there to testify that a substance is or is not cocaine. That is the case. By not being able to properly challenge him, we're prejudiced from the top down, Your Honor. In hindsight, what would you have been able to do differently had you received proper notice? We would be able to ensure that some of the procedures and process were followed, what the conclusions were. There are multiple databases that are larger than others. We would be able to generate cross-examination questions to point out bias or lack of following in the procedures. We were not able to do that, particularly on the TLC, meaning the thin layer chromatograph. We were not aware of what databases or comparisons that they made. Effectively, Your Honor, it's a wicking test. If you've ever taken pens and marked them on paper, stuck them in a glass and you can watch the ink rise, there are databases that determine how fast those things move and they compare them. None of that information was present. We had no idea he would testify particularly to that. In fact, Your Honor, it was basically, this is the disclosure in that case, is find it. That's not how it's supposed to be, Your Honor. So, counsel, refresh my recollection on the briefing here in terms of when you found out what the, or if you never found out what the crime lab expert was going to testify to. Effectively, Your Honor, the government provided notice. We sent notice back saying, hey, there's no reasons and basis in there. We were sent an email and that the opinions were in the crime lab reports. There is 147 pages in the Arkansas crime lab document and it shouldn't be the defense burden to just go through and pick and choose what we think the opinion is. That's not what the rule requires. It requires you to state your opinion and provide your reasons and basis. So, before trial, did you move to exclude the expert's opinion? We did at trial. The district court had effectively said that we should have raised it beforehand and we did. We told the government that we don't think you've provided your notice. The district court's opinion is that, well, we should have handled that pre-trial. But there's a problem with that, Your Honor, in that now the defense is becoming a member of the prosecution saying, you didn't provide this specific opinion as to a particular point of evidence. That violates the defense bar's duty of loyalty. It violates the rules of information that we've received in the case. It should not be our job to And what's your best authority that the facts that occurred in this case result in a reversible error? Your Honor, we believe that allowing the vast amount of expert testimony would be an abuse of discretion. The standard is abuse of discretion for the lower court for if there's been a violation of the standard, that that has occurred in this case. I mean, this case is a citation that these violations don't meet the rules. This is a new rule, Your Honor. I don't know that in the criminal context this has been tested fully or sufficiently. It's also kind of hard to compare civil and criminal context because the rules in the criminal realm are slightly different than our civil counterparts and their disclosure requirements. Counsel, in response to my question, you said that you could have formulated additional questions. Can you be more specific as to maybe something more concrete as to how your client was prejudiced by this lack of notice? Your Honor, they testified effectively when they're saying that the substance was cocaine. Without knowing what test you're relying on or what you're looking at, it's very hard to poke holes in your assessment. You're making a conclusion and I don't know why. If you say it's because it's blue, well, I can look and say, well, these six other items also indicate blue. You didn't exclude those, did you? You didn't follow up. You didn't perform additional testing. Or it might say, well, hey, if you don't follow any of the rules in setting this material up, you might get a blue indication. I could point out that the expert didn't do anything that they said they've done and that he's fabricating testimony or not being truthful with what he says he's done. Next, Your Honors, the issue of profound alert has kind of permeated Arkansas law. This case stemmed from a drug stop on the freeway that was followed by a dog search. Profound alert is a term manufactured by Arkansas State Police. It is only seen stemming from our cases. And particularly, it is a master key to vehicle access for the ASP. What does a profound alert look like? Your Honor, the best example I have is if you're a dog owner, when you come home and your dog is doing anything from sitting, standing, running, spinning in circles, making yelps or looking excited, that becomes a profound alert. If I were an expert witness on the stand, as far as a dog trainer, I would somehow become effectively an advertising agency and I would begin to explain how their nasally breathing or their excited hairs raised or the look in their eye was different. I find that troubling, counsel, and yet we do have, I think, pretty extensive evidence here that the dog was properly trained and we have, I think, credibility determinations about officers testifying that there was an alert. The officers testified that there was a profound alert, Your Honor, and it's very important here, particularly in the terms. These terms of alert, indication, profound alert, final trained response, each one has meaning. They're being mixed and we need to make sure that we are absolutely crystal clear when we talk about them. Profound alert, by the standard for ASP, is supposed to be behavior that is observable and recognizable by anyone, right? That's supposed to be the layperson. That is the standard their own experts have put forth in testimony on the stand. We tested that theory in the best way possible by putting up the canine officer. He said a profound alert occurred at a different point. We put up the expert. He said a profound alert occurred at another different point and so we called the traffic officer, because that's the only witness the defense had available, put him on the stand and he didn't see the same alert that the other two saw. Well, if it's supposed to be visible by anyone, we should all see it at roughly the same time. So counsel, help me, why does it matter in this case where the alert was accurate? However it's classified. Because it is the key to the vehicles. It is the key to the search, Your Honor. If you see an alert where she doesn't see an alert or this honor doesn't see an alert, we have three separate standards. We don't have anything that is, you know, reasonable or rational. How can we judge in one case to another whether it is or isn't? Why would it matter if the alert was accurate? Because if it's accurate, you get to step on the rights of Americans and search their vehicle. Well, it's not stepping on their rights if the search is reasonable. It's still stepping on our rights, Your Honor. You just don't violate the law doing it. All right. Last, Your Honor, during the case and theory of the defense, we put forth information challenging whether or not there was the appropriate defined chemical structure of the isomers in this case. The expert was challenged extensively. It was noted by the district court, particularly when they had us brief the issue the night before the trial concluded. We were not provided an instruction appropriate to recognize this defense, Your Honors. We believe that we're entitled to an instruction on the isomer theory of defense. The government needed to prove that it was not a positional isomer in question. We'd rely on U.S. v. Kuntz, 884 F. 2nd, 349 for that argument. The definition for the statutory definition of cocaine includes the salts, optical and geometric isomers and salts of isomers under 21 U.S.C. 802.17 Delta. Mr. Baker, you're within your lifetime reserve. The evidence was raised, Your Honor. It's one of the reasons we briefed it. We should have gotten jury instruction. The government did not have a witness prepared to testify on that. The expert said as much as so at trial, and I reserve my time. Thank you, Mr. Baker. Ms. Dempsey. May it please the Court. My name is Jamie Dempsey, and I represent the United States of America. To go straight to the expert issue, Your Honors, the expert disclosure by the United States was sufficient in this case, and Mr. Collier cannot demonstrate prejudice from the notice since he was able to subject the expert to vigorous cross-examination regarding the testing methods and conclusions. And to kind of take a dive further into... Counsel, are you saying it was sufficient because they were allowed to question the witnesses or sufficient in and of itself? Sufficient in and of itself, Your Honor. So the district court referred to the disclosures as, quote, dumping a bunch of documents. Do you think that complies with Rule 16a? I in part disagree with that characterization of the disclosure. I would concede that in the initial disclosure, the defendant was provided with the lab report, with the CV of the expert, with his previous testimony, and also the entire crime lab case file, which I think would be the dump of information that the district court was referring to. So you think this court should hold that that's sufficient compliance with Rule 16a? Well, there was follow-up after that, Your Honor, and a subsequent email. I think the first email was in December 12th of 2022, January 10th of 2022. Counsel for the United States provided an email forwarded from the chemist saying he will testify to his conclusion that this was cocaine and the testing and methods that he did. And frankly... Are those part of the record? Pardon? Are those emails in the record? I don't think we were provided. I believe that the court made them exhibits of its own, that specifically the email of January 10th 2022. I'm not sure that they were provided on appeal. I didn't see them in the appellate record. Right. It's referenced in the record. And he read the second email in particular, the January 10th email. And that email is what the government was limited to inquiring about with the expert. And there was a lengthy exchange between counsel for Mr. Collier and him. Well, we don't have that before us. Let's suppose that the compliance with Rule 16 was not sufficient. Can you address prejudice? There was no prejudice to Collier in this case because he was able to cross-examine the expert at trial based on the material he received. And he got concessions from the expert that he was not an expert in stereoisometry. He explored what databases were used. He explored both inside and outside the presence of the jury. And so he was able to deduce enough evidence to support his isomer theory of the defense, which he presented during that lengthy cross-examination. So we would submit it's not an abuse of discretion by the court and that he was not prejudiced. To the What we're looking at is what Florida v. Harris requires. And it specifically rejected an inflexible set of evidentiary requirements and held that the question regarding a dog alert and a dog's reliability is whether the fact surrounding a dog's alert viewed through the lens of common sense would make a reasonably prudent person think a search would reveal contraband. If there's no objective, discernible, repeatable behavior that a dog exhibits to constitute a profound alert, how could a reasonable person reach that conclusion? Well, Your Honor, this court in the United States v. Tuton kind of rejected the idea that a specific indication like sitting or laying or standing is required and said that a profound alert, which was described in that case by, I think at the time, Sergeant Roby Rhodes of the Arkansas State Police. And how he explained it, and he gave similar testimony at the suppression hearing in this case, was being out in the field on the side of the road with traffic and wind and lots of other things going on, they might not do what they do during training or certification. But the fact that you can observe a change in behavior that would make you think there was contraband in the car is enough, and this court upheld that. This dog went through hundreds of hours of training. What was it trained to do? To alert as to whether there was a presence of narcotics. Sergeant Major Rhodes testified at the hearing, what's really important in that training is whether a dog alerts to no narcotics. And if a dog ever did that, it would not be certified. And so Raptor and all of these different single-blind and double-blind testing scenarios never alerted to narcotics when there were not narcotics there. And that's the... This dog has a very good record. I believe the evidence shows in that regard. But does the absence of an objective, observable alert signal make it very easy for an officer to claim that there's an alert that even his partner can't see? Not under Tuton, Your Honor. Because, I mean, again, it goes back to relying on a reasonable person. We got... It's not a high... It's not a very rigid set of requirements about a specific indication or anything else. This is about whether a reasonable person would observe a change in behavior. And, you know, as Judge Marshall explained in his ruling, he observed the video, he listened to the testimony, and he saw the changes in behavior of the dog during the walk around the car. I'm curious. I don't think it's an issue in this case, but how did the dog get there? As I understand, the stop was for swerving in their lane. Was this delayed while the drug dog arose, arrived, or how did the dog get there? The officer who made the initial stop, his partner's a K-9 officer, and so after he made the initial stop and spoke with the driver and suspect, the story that was explained about why he was where he was and that he had had a rental car, that made him suspicious. And he asked if he could search his car, and he said no. And so he waited, I believe, maybe several minutes. It was not a lengthy delay. And that, I mean, that issue is not really, wasn't really live at the suppression hearing and is not. To move on to the issue of the isomer defense instruction that was requested, the district court did not abuse its discretion in denying the jury instruction on the isomer theory of defense because the sole evidence before the jury was that the substances were cocaine and not a structural isomer of cocaine. So there was no evidence to really base this instruction on. And the instructions that were given at trial allowed Mr. Collier to argue this theory of the defense that, you know, the expert didn't, that he could call into question the expert's opinion about what it was. Also raised on appeal was that there was substantial evidence that Mr. Collier knew he had illegal drugs. He testified to that himself. And then, of course, that the officers believed it was cocaine and that Mr. Hedges tested them to be the court did not err in denying the motion for acquittal. Also on appeal, Mr. Collier raised the issue of whether a remark made by counsel for the United States should have merited a mistrial. And so the United States would argue that the district court did not abuse its discretion by denying Collier's motion for mistrial. The district court determined it was not warranted based on this single remark during closing. And Mr. Collier deferred to the court about the instruction that would be given that the counselor's statements were not evidence. Mr. Collier himself testified he knew the drugs were in the car. And among the other overwhelming evidence, he cannot demonstrate prejudice and the court did not abuse its discretion. And if the court has no other questions, I would submit that the United States would respectfully request that this court affirm the district court. Thank you. I don't see any. Thank you, Ms. Dempsey. Mr. Baker. Your honors, in terms of the expert, there was no limitation put on his testimony. He testified to anything and everything that he wanted to. No objection based on scope was authorized. In fact, we just ended up getting a continuing objection to the entire set of testimony. He was never limited in any way. Were there specific objections made to we object to every word that he spoke? Uh, because we don't believe that they were valid, validly disclosed in order to spare Judge Marshall the pain. He authorized the continuing objection to the entire set. Uh, it is to me. It is questionable when the government says, Well, I did my job sufficiently. I can parts that I could have done better on and would have done better on had I had more information. Just because I did well on some parts doesn't mean that there were other parts that I couldn't have done equally as well. I could have questioned on all of the tests. I could have pointed out numerous flaws or a pattern of flaws. This case is not Florida v. Harris. It is not the total totality of Arkansas saying that something exists and using any reason under the sun to make it so. Fourth Amendment and K-9 should not take a decoder ring that is only readable by the K-9 handler to determine whether or not an alert was present. That is not the standard that their own experts have set in previous cases. Tutton said their expert said it should be viewable by a layperson. That means anybody in this court should be able to see that and be like, That dog just found it. I have four rescues, your honor. And when I say treat her ball at the house, they go crazy. That is not a profound alert. Shouldn't be. So in this case, finding drugs for canines is a game and probable cause shouldn't exist just because they're playing. Thank you, Mr Baker. The court notes that you are representing your client under the Criminal Justice Act, and we thank you for your willingness to be a part of the panel. Thank you for having me here, your honor. It's my first time, so good to meet all of you. Thank you. Also, Miss Dempsey, we appreciate both counsel's participation in an argument before the court. It's been helpful. We'll take the case under advisement. Counsel might be excused.